UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

*FILED*

*MAY 0 4 2009*

JAMES RAY DAVIS,

          Plaintiff,

       v.

STATE OF OREGON, DIANE
ERICKSON, ROB PERSSON, TIM
WELSH, THERESA ARENDELL, DENISE
NORBY, MAX WILLIAMS, GINA
RANEY, KIM BROCKAMP, and DOES 6-
10,

          Defendants.

_____

STATE OF OREGON, DIANE
ERICKSON, ROB PERSSON, TIM
WELSH, and DOES 6-10,

          Counterclaim Plaintiffs,

       v.

JAMES RAY DAVIS,

          Counterclaim Defendant.

_____

THERESA ARENDELL, STATE OF
OREGON, DIANE ERICKSON, ROB
PERSSON, TIM WELSH, DENISE
NORBY, and DOES 6-10,

          Counterclaim Plaintiffs,

       v.

JAMES RAY DAVIS,

          Counterclaim Defendant.

Civ. No. 07-635-AC

FINDINGS AND
RECOMMENDATION

1

ACOSTA, Magistrate Judge:

## Introduction

Before the court are a motion for partial summary judgment filed by Plaintiff James Ray Davis ("Davis") and a motion for summary judgment filed by Defendants State of Oregon, Diane Erickson, Rob Persson, Tim Welsh, Denise Norby, Theresa Arendell, Max Williams, Gina Raney, Kim Brockamp, and Does 6-10 ("Defendants"). The parties dispute whether Davis's civil rights claim arising from his allegedly unlawful incarceration is cognizable under 42 U.S.C. § 1983 ("section 1983"). Defendants assert that Davis cannot maintain a cause of action under section 1983 and, if he can, the length of his incarceration was lawful under Oregon Revised Statutes ("ORS") 137.370. Davis asserts that Defendants wrongly applied ORS 137.370 and seeks partial summary judgment that the calculation was erroneous. For the reasons that follow, the court should deny both motions.

## Factual Background

The parties agree on the following facts. On November 23, 1998, Davis was arrested for attempted burglary, a violation of state law. This arrest triggered arrests on two additional charges: an outstanding Multnomah County warrant for failure to appear on a drug charge and as a felon in possession of a firearm, in violation of federal law. Davis was also under suspicion for several burglaries in Washington County, and he was questioned by Washington County authorities and eventually housed in Washington County jail. He was indicted on January 13, 1999, on his federal charge and on February 19, 1999, on a thirty-three count burglary charge in state court.

These charges were ultimately resolved in a single plea agreement wherein Davis was

2

sentenced to eighty (80) months on both federal and state charges, sentences to run concurrently with one another. The agreement provided that Davis would serve his sentence in federal custody. Davis was sentenced, in accordance with the plea agreement, in federal court on January 5, 2000, and in state court on January 20, 2000. The state court judge ordered that the state sentence run concurrently with the federal sentence.

On January 24, 2000, Davis was transported from Washington County jail to the Oregon Department of Corrections ("ODOC"). The Washington County Sheriff informed ODOC that Davis was entitled to 412 days of pretrial[1] incarceration credit and ODOC projected Davis's release from his state sentence on August 6, 2005. Davis was transferred to federal custody on November 29, 2000, and was to receive credit for time served in state custody since May 17, 1999.

On October 21, 2004, Davis completed his federal sentence and was returned to ODOC custody to complete the remainder of his state sentence.[2] Due to the fact that the federal Bureau of Prisons had credited Davis with 393 days of pretrial incarceration credit, ODOC retracted 393 days it had previously credited and recalculated Davis's sentence. Based on this calculation, ODOC projected Davis's release for September 4, 2006.

After repeatedly objecting to his new release date without effect, Davis filed a habeas corpus

---

[1] The terms "pretrial" and "presentence" are used and interpreted interchangeably for purposes of this opinion.

[2] Davis was ineligible for earned time credits on his state sentence and, thus, his state sentence was longer than his federal sentence, for which he *was* eligible for earned time credits. Earned time credits are distinct from pretrial incarceration credits; they are granted to prison inmates for various forms of good behavior exhibited while in custody. *See State ex rel. Engweiler v. Cook*, 197 Or. App. 32, 35, 103 P.3d 1205 (2005) ("The starting point is the text of ORS 421.121, which provides for so-called 'earned time credits' against an inmate's incarceration term if the inmate behaves appropriately while in prison.")

petition in federal court on December 5, 2005. Prior to the requested relief being either granted or denied, the parties reached an agreement and stipulated to the dismissal of the action. The stipulated dismissal agreement provided that Davis would be released as soon as the federal court's original sentencing order was amended. Consistent with the stipulated dismissal agreement, the court amended the judgment in the federal criminal case "to state that the concurrency language includes 'except for time between January 1, 1999, to January 1, 2000, petitioner shall not receive 123 days of credit for time served on his federal sentence.'" (Dingle Affidavit ("Aff.") Exhibit ("Ex.") 23.) Consequently, Davis was released from ODOC custody on May 1, 2006. Davis filed this civil action on April 27, 2007.

### Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## Discussion

Davis argues that, because his state and federal sentences were to run concurrently, his pretrial incarceration credits should have been applied to both sentences. He bases this argument on the statutory text and legislative history of ORS 137.370 and the allegedly incorrect procedures ODOC used to compute his sentence. Davis seeks partial summary judgment that Defendants' calculation was erroneous. Defendants argue their entitlement to summary judgment on four grounds: (1) the agreement to dismiss the habeas corpus petition acted as a release of future claims;

(2) by agreeing to his release date in the stipulated dismissal, Davis eliminated the basis of liability for a section 1983 action for damages; (3) the claim implicates the validity and duration of Davis's sentence and may only be pursued via a petition for habeas corpus; and (4) ODOC's sentence calculation was correct.  The parties and the court agree that the issues should be resolved in the above sequence.

A.    Release of claims

Davis argues that the stipulated dismissal agreement does not amount to a release of his federal right to sue under section 1983 because the text of the stipulation does not contain a release; the stipulation provides no consideration for such a release; the parties could have explicitly drafted the stipulation to contain a release, but did not; the stipulation was not voluntary; and, stipulations as releases of future damage claims are contrary to public policy.

In *Newton v. Rumery*, 480 U.S. 386 (1987), the United States Supreme Court held that an agreement not to prosecute a criminal defendant in exchange for a waiver of that defendant's right to sue under section 1983 is not per se unlawful.  The Court explained that such agreements were not necessarily any more coercive than those already routinely and lawfully encountered by criminal defendants.  The Court wrote, "[i]n many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id*. at 394.  By analogy, this may also be true of a prisoner seeking speedy and sure resolution of a habeas petition.  In *Newton*, the Court acknowledged the danger to the public interest if these agreements were abused by prosecutors, but balanced this against the public's interest in enforcing such agreements and "protect[ing] public officials from the burden of defending [] unjust claims . . . ." *Id.* at 396.  The

situation in *Newton* is analogous to the situation faced by Davis in his habeas corpus action. Davis had the opportunity to choose whether to end his incarceration on an earlier date than that determined by ODOC, in exchange for abandonment of his habeas corpus petition. Therefore, under *Newton*, a release of the right to sue under section 1983 would not necessarily be invalid.

However, that is not to say that Davis actually released his right to sue under section 1983 when he entered into the stipulated dismissal agreement and terminated his habeas corpus action. The court must decide whether the stipulated dismissal agreement acts as a release of Davis's federal right. "A release of claims under section 1983 is valid only if it results from a decision that is voluntary, deliberate, and informed." *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). This analysis depends on both objective and subjective factors, and "summary judgment is precluded when conflicting inferences might be drawn about a party's state of mind as reflected by objective indications." *Id.* at 1204.

"[T]he interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Oregon*, 7 F.3d 152, 156 (9th Cir. 1993). Where the agreement is unambiguous, it should be "enforced according to [its] terms." *Id.* at 157 (citing *Oregon Sch. Employees Ass'n, Chapter 89 v. Rainier Sch. Dist. No. 13*, 311 Or. 188, 808 P.2d 83, 87 (1991)). If an agreement is ambiguous, meaning "it has no definite significance or []is capable of more than once sensible and reasonable interpretation," the fact finder must attempt to ascertain the intent of the parties. *Id.*

Accordingly, the court turns its attention to the text of the stipulated dismissal agreement, dated April 28, 2006. The stipulated dismissal agreement sets forth the parties' agreement, in five parts:

1) the Judgment and Commitment Order in *United States v. Davis*, CR. 99-17-HA, should be amended to state after the reference to concurrent state incarceration "except for the time between January 1, 1999, to January 1, 2000, petitioner shall not receive 123 days of credit for time served on his federal sentence"; 2) upon such amendment, Mr. Davis shall be released forthwith from the state sentence in Washington County, No. C99-40467CR; 3) this settlement resolves the dispute between the parties regarding the sentence calculation in *Davis v. Howton*, CV 05-1830-HU, except that Mr. Davis may seek a remedy in the form of modification or termination of post-prison supervision or supervised release; 4) Mr. Davis will move to dismiss his pending habeas corpus petition in CV 05-1830-HU upon his release from his current state sentence; and 5) the federal term of imprisonment remains discharged given Mr. Davis's federal release date of October 21, 2004[.]

(Dingle Aff., Ex. 22 at 1-2.)

Under the plain language of the stipulated dismissal agreement, Davis agreed, in exchange for his release upon amendment of the "Judgment and Commitment Order," that the dispute regarding his sentence calculation raised in his habeas action, *Davis v. Howton*, was resolved. There was no explicit release by Davis of his right to sue under section 1983, nor was there an implicit release of such claims. The agreement did explicitly resolve "the dispute between the parties regarding the sentence calculation" raised by Davis's habeas action; this does not amount, however, to a release of federal constitutional claims. *Id*. at 2. There is no evidence to suggest that Davis intended to release his right to sue under section 1983 or that Defendants sought such a release. The court declines to infer the broader release urged by Defendants, based only on an agreement to resolve a sentence calculation. Accordingly, the court finds that Davis did not release his right to sue under section 1983 in stipulating to dismissal of his habeas action.[3]

B.    Basis of liability

Davis argues that in accepting the stipulated dismissal agreement he did not stipulate to the

---

[3] Because, on its face, the stipulated dismissal does not amount to a waiver of section 1983 claims, the court need not consider the intent of the parties or circumstances attending the agreement.

propriety of the sentence calculation by ODOC, but only recognized that upon his release from custody, his habeas action would be moot.  In fact, Davis claims, had the stipulated dismissal agreement included a release of section 1983 civil liability, Davis may have chosen to remain in custody.  Davis also argues that he should not be penalized for negotiating release at the earliest opportunity and thus mitigating his damages.  Defendants maintain that the issue underlying Davis's current civil action, the propriety of ODOC's sentence calculation and application of pretrial incarceration credits, was resolved in the stipulated dismissal agreement and, therefore, cannot be revisited by this court.

The stipulated dismissal states:  "this settlement resolves the dispute between the parties regarding the sentence calculation in *Davis v. Howton*, CV 05-1830-HU . . . ."  *Id.*  Davis's habeas corpus petition specifically challenges "the imposition of a surprise increase in [Davis's] term of incarceration under a State statute . . . based on a State employee(s) determination of a fact (other tha[n] a prior conviction) that was not found by a jury or admitted by [Davis], is against the authority of jurisdiction of U.S. District Court Judge Ancer L. Haggerty in *US v. Davis*, violating Right(s) secured in and under," the United States Constitution.  (CR 05-1830-HU, Docket No. 1 at 4.) Davis's complaint in the current action implicates this same allegedly erroneous recalculation of his sentence by employees of ODOC as his habeas petition.

Even so, Defendants' characterization of the stipulated dismissal does not provide full context.  The agreement does *not* state that May 1, 2006, was Davis's appropriate release date, nor does it establish that Davis himself agreed that it was the appropriate release date.  Rather, the agreement provides for Davis's release "forthwith" upon the amendment of Judge Haggerty's "Judgment and Commitment Order."  This language reasonably could be interpreted as an implicit

admission that Davis's habeas corpus petition was meritorious, and rather than further delay Davis's release pending judicial resolution of the habeas corpus petition, the state elected to release Davis as soon as possible which, in this case, was as soon as the order was amended.  In other words, the state may have acted to cut its losses.

From this perspective, the stipulated dismissal agreement appears less a binding admission by Davis that his actual release date was appropriate, than a recognition that upon Davis's release, his habeas petition was resolved as moot.  Such an agreement would not foreclose a section 1983 action for damages to compensate Davis for his allegedly unlawful incarceration.  However, the court must also confront whether the language in the stipulated dismissal altering, nunc pro tunc, the original "Judgment and Commitment Order" forecloses a section 1983 action by retroactive judicial decree.  In other words, if the stipulated amendment of the original judgment alters that judgment such that Davis's ultimate release date is consistent with the court's amended order, then the stipulation will have eliminated the basis of liability for Davis's section 1983 claim.  The court concludes that it does not.

On its face, the amended judgment is ambiguous and somewhat confusing.  It states that the sentences shall run concurrently "except for time between January 1, 1999, to January 1, 2000, petitioner shall not receive 123 days of credit for time served on his federal sentence." (CR 99-17-HA, Docket No. 46.)  The court cannot discern from this language the actual operation or intent of the amendment.  First, the amendment does not otherwise correspond to Davis's arrest, sentencing, and incarceration timeline.  Davis's original release date was set for August 6, 2005, and he was ultimately released on May 1, 2006, which was 267 days later than his original release date.  Nor is the period between January 1, 1999, and January 1, 2000, meaningful with respect to Davis's

timeline. Thus, the language of the amended judgment does not bear an obvious correlation to the major events that preceded it.

If the intent of the stipulated judgment is unclear to the court, its meaning was likely unclear to Davis as well. And, as Davis points out, the government drafted the document and therefore, under principles of contract interpretation, any ambiguity should be construed against the drafter who, in this case, is the government. *See Quality Contractors, Inc. v. Jacobsen*, 139 Or. App. 366, 371, 911 P.2d 1268 (1996) ("If we cannot determine the parties' intent, we resort to the maxim of construing the ambiguous term against the drafter."). There is undeniable tension in the stipulated dismissal between the portion that purports to resolve the sentence calculation and the proposed amendment to the judgment, which is unclear and bears no obvious relation to the actual sentence calculation or term of Davis's incarceration. The only way the court can reconcile the two is to tie Davis's ultimate release date to the entry of the amended judgment. The language of the stipulated dismissal conditions Davis's release upon the amendment to the original judgment and thus creates the presumption of a direct relationship between the two. However, the logic behind such a relationship cannot be discerned.

For the reasons stated, the court concludes that there is a genuine issue of material fact as to whether the stipulated dismissal fully resolved the sentence calculation with respect to Davis's pretrial incarceration credits.

C.    Habeas corpus, section 1983, and *Heck*

Defendants argue that because Davis's claim challenges the validity and duration of his confinement, it implicates the core of habeas corpus and, thus, Davis may not proceed under section 1983 although his claim is otherwise within its literal terms. The Supreme Court held in *Heck v.*

*Humphrey*, 512 U.S. 477 (1994) that "a damages action is not cognizable under § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Docken v. Chase*, 393 F.3d 1024, 1027 (9th Cir. 2004) (citing *Heck*, 512 U.S. at 487). This is known as the favorable termination rule, and it requires that a plaintiff seeking damages under section 1983 for "unconstitutional conviction or imprisonment . . . must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-487.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court enunciated a rule that incorporated its post-*Heck* jurisprudence in this area. "These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to the conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82 (emphasis in original). Therefore, even though Davis seeks only damages, not immediate or speedier release (because he is no longer in custody), his claim still may be barred under *Heck*. Here, a judgment in Davis's favor would invalidate the duration of his confinement because, under Davis's proposed calculation, he was incarcerated for 267 days longer than his sentence provided for. Davis does not claim that the underlying conviction or sentences were reversed, expunged, or deemed invalid; thus, he will not avoid *Heck*'s application by operation of the favorable termination rule.

Davis argues, however, that because he is no longer incarcerated, habeas relief is unavailable

to him and, thus, his only recourse is under section 1983. Davis cites *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002), a Ninth Circuit decision holding that where a habeas corpus petition is mooted because the petitioner is no longer incarcerated, a section 1983 claim for damages is cognizable, even if it implies the invalidity of his confinement. Defendants counter that *Nonnette* does not apply in the present case because Davis's habeas petition was not simply mooted by his release, rather, Davis negotiated a settlement of that petition resulting in its dismissal.

As previously discussed, there is a question of fact as to whether the parties intended the stipulated dismissal of Davis's habeas petition to moot his petition and permit his immediate release, or whether they also intended it to extinguish all legal claims Davis could bring arising from his allegedly over-long incarceration. If a finder of fact concludes that the parties intended their agreement to encompass only the former alternative, then Davis did not release and discharge claims, including section 1983 claims, arising from his incarceration. If that is true, then *Nonnette* applies and *Heck's* bar to section 1983 claims in this circumstance is not applicable, and Davis may proceed with this lawsuit. Accordingly, Defendants' motion on this point should be denied.

D.    Sentence calculation under ORS 137.370

In Oregon, the concurrency of sentences is governed in part by ORS 137.370. Relevant to the current matter, the statute states:

> (2) Except as provided in subsections (3) and (4) of this section, when a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:
> (a) The time that the person is confined by any authority after the arrest for the crime for which sentence is imposed; and
> (b) The time that the person is authorized by the Department of Corrections to spend outside a confinement facility, in a program conducted by or for the Department of Corrections.

. . .

(4) A person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail towards service of the term of confinement.

OR. REV. STAT. 137.370(2),(4) (2007).

Davis alleges that ODOC's sentence calculation manual improperly applies relevant case law. In particular, Davis objects to the application of *Chambers v. Maass*, 92 Or. App. 283, 758 P.2d 393 (1988), declaring it "wholly inapplicable" to Davis's sentence calculation. In *Chambers*, the prisoner was on temporary leave from the Oregon State Penitentiary when his leave was revoked after he was arrested on new robbery charges. The Oregon Court of Appeals held that the time between the arrest and sentencing on his new charges did not apply as pretrial incarceration credit on his new sentence because it was "related to the new robbery charges *only* in that those charges prompted the revocation of his temporary leave." *Id.* at 285 (emphasis in original). This differs from the treatment of pretrial incarceration credits where two crimes are genuinely related. The court agrees that *Chambers* does not apply to the facts of Davis's case. Accordingly, the court turns its attention to the appropriate sentence calculation under the relevant Oregon statutes.

Davis claims that section (2)(a) governs his sentence calculation and provides that the term of confinement includes confinement by any authority following the arrest for the crime for which the conviction was imposed. Davis cites three exceptions to section (2)(a): where the judgment is vacated and a new sentence is imposed; where the court orders consecutive sentences; and where the confinement is unrelated to the crime for which the sentence was imposed. Davis argues that only the last exception arguably applies for the period between the federal and state sentencings, January

14

5, 2000, to January 20, 2000.

Defendants cite the Oregon Court of Appeals' interpretation of ORS 137.370 in *State ex rel Curry v. Thompson*, 156 Or. App. 537, 967 P.2d 522 (1998). This reading of ORS 137.370 requires that, to be eligible for time served in pretrial incarceration, the prisoner be held "solely" for the crime in question. Thus, because Davis was not confined solely on the state charges, ODOC could not also apply pretrial incarceration time served to Davis's state sentence.

Davis counters that *Curry* does not apply because the court was construing section (4), which operates as an exception to section (2)(a), and Davis does not claim operation of section (4) on his sentence. Section (4) deals with periods of incarceration for crimes unrelated to the crime for which a sentence is being imposed. Thus, to the extent that section (4) is inapplicable to Davis's sentence calculation, *Curry* also is inapplicable. Even if section (4) does apply, Davis argues, it would not have taken effect until the date Davis was indicted on the federal charge and, in any event, Defendants have not demonstrated that the relational requirement of section (4) has been met.

The court in *Curry* specifically interpreted and applied ORS 137.370(4), which acts as an exception to ORS 137.370(2)'s broadly inclusive treatment of pretrial incarceration credits. Davis is correct that Defendants do not argue that Davis's state and federal charges meet the "not directly related" criteria of section (4). The court agrees with Davis that there is not a genuine issue of material fact as to whether the charges are directly related. Both state and federal charges resulted from Davis's arrest on November 23, 1998. *See* Defendants' Memorandum at 2 ("The plaintiff was arrested by the Portland Police Bureau on November 23, 1998 for attempted burglary. . . . At the time of his arrest the plaintiff was found to be in possession of a firearm and ammunition."). Davis was in possession of the weapon at the time he was arrested on the state burglary charge. The

weapon was one of several firearms stolen in the course of a string of burglaries committed by Davis, including the burglary for which Davis was arrested. Thus, the crimes bear a meaningful relationship to one another beyond the fact that they were charged as the result of a single arrest and, thus, the court concludes that they were directly related. Therefore, the section (4) exception to section (2)(a) does not apply in this case. Accordingly, the requirement set forth in *Curry*, that a prisoner is entitled to pretrial incarceration credits only if held "solely" for the crime in question, is inapplicable here. Thus, ODOC's calculation of Davis's sentence must otherwise comport with section (2)(a) to pass muster in this court.

Davis argues that, had he been sentenced on two state court charges with sentences to run concurrently, pretrial incarceration credit would be applied to both sentences. Because the statute does not differentiate between state and federal sentences, the result should have been the same, regardless of the fact that one sentence was imposed in federal court and one in state court. Davis presents the deposition testimony of several ODOC employees who agree that, had both cases arisen in Washington County, pretrial incarceration credit would apply equally to both.

In her deposition, Theresa Arendell testified that a prisoner charged with "coinciding state charges, concurrent, [in the] same county," would receive pretrial incarceration credit on both charges, all other things being equal. (Davis Decl., Ex. 1 at 38:2-39:16.) During the deposition of Dianne Erickson, Davis's counsel presented the following hypothetical:

> Q:    Now hypothetically, if he had two separate cases that were both filed in Washington County, one is the case that you've seen, the burg case in its entirety, exactly the same, the second case was felon in possession of bullets or felon in possession of a firearm, whatever it would be, and the exact same scenario played out. Everything except no fed. Just two Washington County cases.
>        Would he receive concurrent time for the presentence incarceration from November 23, '98 through January 4, 5, 2000 on both cases?

(Davis Decl., Ex. 2 at 34:8-18.) Erickson responded that, based on the information set forth in the hypothetical, the prisoner would receive credit on both sentences. She noted, however, that "there [are] a lot of variables that go into calculating that." *Id.* at 34:21-35:2. Davis's counsel presented a substantially similar hypothetical to Denise Norby during her deposition. She responded that, yes, the prisoner would "receive credit for all preincarceration time . . . on both cases." (Davis Decl. Ex. 3 at 26:15-27:3.) The depositions of Tim Welsh and Gina Raney are similarly consistent with Davis's contention that, under the circumstances presented by Davis's cause of action, except that there are two state sentences that run concurrently (rather than a state and a federal sentence), a prisoner would receive pretrial incarceration credits for both sentences. *See* Davis Decl. Ex. 4 at 42:11-20; Ex. 5 at 35:5-11.

The court agrees with Davis that the statute does not differentiate between state and federal sentences and invites broad application by its plain terms, i.e., it includes in its sentence calculation "[t]he time that the person is confined by any authority after the arrest for the crime for which sentence is imposed." OR. REV. STAT. 137.370(2)(a). Defendants assert that Davis was not entitled to concurrent pretrial incarceration credit because, at the time, he was held on multiple, distinct charges and crediting the time on each sentence would be impermissibly duplicative. This position, however, is at odds with the testimony of several defendants, employees of ODOC, who state that a prisoner held on two distinct state charges would be entitled to pretrial incarceration credits for both. The statute draws no distinction between state and federal sentences and Defendants give the court no reason to import that distinction into the statute. Accordingly, the statute should operate the same with respect to state and federal charges that are sentenced to run concurrently.

That being said, the ODOC employees' testimony indicates that the sentence calculation is

17

the result of many factors. In fact, the testimony states that, had the charges occurred in two different counties, the sentence calculation would have been different, even if we assume that both were violations of state law. *See* Davis Decl., Ex. 1 at 38:23-39:1 ("For coinciding state charges, concurrent, same county, he's eligible for the credit towards those county convictions. If it was conviction from another county, he would not."). The court concludes that, on this record, genuine issues of material fact remain as to whether ODOC's calculation of Davis's sentence was correct. Accordingly, both summary judgment motions on this point should be denied.

### Conclusion

For the reasons stated, Defendants' motion for summary judgment (#37) should be DENIED and Davis's motion for partial summary judgment (#42) should also be DENIED.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than May 19, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 5th day of May, 2009.

JOHN V. ACOSTA
United States Magistrate Judge