UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES RAY DAVIS, | Civ. No. 07-635-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| STATE OF OREGON, DIANE ERICKSON, ROB PERSSON, TIM WELSH, THERESA ARENDELL, DENISE NORBY, MAX WILLIAMS, GINA RANEY, KIM BROCKAMP, and DOES 6-10, | |
| Defendants, | |

ACOSTA, Magistrate Judge:

*Introduction*

Before the court is the second motion for summary judgment filed by Defendants State of Oregon, Diane Erickson, Rob Persson, Tim Welsh, Denise Norby, Theresa Arendell, Max Williams, Gina Raney, Kim Brockamp, and Does 6-10 ("Defendants"). Plaintiff James Ray Davis

FINDINGS AND RECOMMENDATION        1                                    *{TDW}*

("Davis") alleges four claims against Defendants in this action. His first three claims allege violations of Oregon state law arising out of his allegedly illegal confinement. His fourth claim alleges civil rights violations under 42 U.S.C. § 1983 ("section 1983"). Defendants move the court for an order granting summary judgment because Davis's state law claims against Defendant State of Oregon are barred by the Eleventh Amendment. In addition, Defendants contend that the undisputed facts in this case demonstrate that Davis's constitutional rights were not violated, or, if this court finds that his rights were violated, that Defendants are qualifiedly immune from suit for damages. For the reasons set forth below, the court should grant Defendant's second motion for summary judgment.

*Factual Background*

The parties agree on the following facts. On November 23, 1998, Davis was arrested for attempted burglary, a violation of state law. This arrest triggered arrests on two additional charges: an outstanding Multnomah County warrant for failure to appear on a drug charge and as a felon in possession of a firearm, in violation of federal law. Davis was also under suspicion for several burglaries in Washington County jail. He was indicted on January 13, 1999, on his federal charge and on February 19, 1999, on a thirty-three count burglary charge in state court.

These charges were ultimately resolved in a single plea agreement wherein Davis was sentenced to eighty (80) months on both federal and state charges, sentences to run concurrently with one another. The agreement provided that Davis would serve his sentence in federal custody. Davis was sentenced, in accordance with the plea agreement, in federal court on January 5, 2000, and in state court on January 20, 2000. The state court judge ordered that the state sentence run concurrently with the federal sentence.

On January 24, 2000, Davis was transported from Washington County jail to the Oregon

Department of Corrections ("ODOC"). The Washington County Sheriff informed ODOC that Davis was entitled to 412 days of pretrial[1] incarceration credit and ODOC projected Davis's release from his state sentence on August 6, 2005. Davis was transferred to federal custody on November 29, 2000, and was to receive credit for time served in state custody since May 17, 1999.

On October 21, 2009, Davis completed his federal sentence and was returned to ODOC custody to complete the remainder of his state sentence.[2] Because the Federal Bureau of Prisons had credited Davis with 393 days of pretrial incarceration credit, ODOC retracted 393 days it had previously credited and recalculated Davis's sentence. All reviews of Davis's sentence were conducted pursuant to the policies and procedures of ODOC. Defendant Gina Raney ("Raney"), the Policy Manager for the Offender Information and Sentence Computation Unit at ODOC from 1998 until September 2007, co-wrote and developed the policy used to review Davis's sentence calculation based on advice given by the Oregon Department of Justice ("DOJ"). Raney received written advice from the DOJ confirming ODOC's interpretation of OR. REV. STAT. ("ORS") 137.370. Raney then developed the policy pertaining to ORS 137.370 and the DOJ reviewed the policy to ensure that it complied with their legal advice. This policy was then distributed to ODOC prison term analysts for use in computation of sentences in ODOC.

Up to six month prior to Davis's scheduled release date, defendant Diane Erickson

---

[1] The terms "pretrial" and "presentence" are used and interpreted interchangeably for purposes of this opinion.

[2] Davis was ineligible for earned time credits on his state sentence and, thus, his state sentence was longer than his federal sentence, for which he *was* eligible for earned time credits. Earned time credits are distinct from pretrial incarceration credits; they are granted to prison inmates for various forms of good behavior exhibited while in custody. *See State ex rel. Engweiler v. Cook*, 197 Or. App. 32, 35, 105 P. 3d 1205 (2005) ("The starting point is the text of ORS 421.121, which provides for so-called 'earned time credits' against an inmate's incarcerative term if the inmate behaves appropriately while in prison.")

FINDINGS AND RECOMMENDATION           3                              {TDW}

("Erickson"), a prison term analyst, conducted a routine release review of Davis's sentence. As a result of the release review, Davis's sentence was recalculated based on a step-by-step procedure set forth in a policy manual explaining how to apply credit for time served with federal and state sentences running concurrently. Following Erickson's release review, defendant Theresa Arendell ("Arendell"), as lead worker, conducted an independent review of Davis's file to ensure that Davis's scheduled release date was correct. While conducting her review, Arendell discovered that the federal sentence calculation sheet, which explained the federal sentence calculation, was not in Davis's file. Upon receipt of the federal sentence calculation, Arendell gave the completed file back to Erickson for review and then Arendell completed a second independent review of Davis's sentence calculation. Based on the policy set forth in ODOC's procedural manuals, Arendell determined that Davis was not entitled to 393 days that had been credited to his sentence.

On April 29, 2005, Erickson advised Davis that ODOC had recalculated his sentence based on a "file review" and "new documentation received from Federal Bureau of Prisons." Davis was notified that his new projected release date was September 4, 2006. On May 23, 2005, Davis sent an Inmate Communication Form ("ICF") to Erickson, alleging that his sentence was improperly calculated in violation of his plea agreement, federal statues, and his constitutional rights. On May 27, 2005, Davis was notified by the superintendent of Oregon State Correctional Institution that his sentence was correctly computed pursuant to ORS 137.370(2)(a) and that he was not eligible to receive time-served credits that were applied to his federal sentence. On May 27, 2005, Davis sent another ICF requesting copies of his previous ICF. It was reviewed and processed on May 31, 2005.

On June 16, 2005, Davis filed a grievance alleging that Erickson had wrongfully changed his release date. Davis was advised that he could not grieve the sentence computation and that this

issue must be "addressed with the courts." On June 30, 2005, Davis sent Erickson a four-page correspondence addressing the reasons he believed his sentence was incorrectly computed. Defendant Tim Welsh ("Welsh"), a prison term analyst, responded to Davis's complaints following the June 30, 2005, memorandum. Welsh reviewed Davis's prison term calculation in conjunction with DOC technical staff and determined Davis's recalculated sentence was correct based on calculation procedures.

On August 3, 2005, defendants Rob Persson ("Persson"), Welsh, and Denise Norby ("Norby") responded to Davis via an interoffice memorandum and notified him that his sentence was correctly calculated. On August 4, 2005, Davis sent Persson an ICF questioning whether certain events pertaining to Davis's criminal case had occurred. On August 7, 2005, Davis sent an ICF to Persson with additional information relating to a prior communication. A response was issued on August 23, 2005. On August 15, 2009, Davis sent Welsh an ICF asking that Welsh correct previous communications (which incorrectly identified Klamath County as the county where Davis was convicted of his state charges) and asking that he provide authority of ODOC to "find facts." Welsh responded on August 23, 2009.

After Davis's repeated objections to his new release date without effect, Davis filed a habeas corpus petition in federal court on December 5, 2005. Prior to the requested relief being either granted or denied, the parties reached an agreement and stipulated to the dismissal of the action. The stipulated dismissal agreement provided that Davis would be released as soon as the federal court's original sentencing order was amended. Consistent with the stipulated dismissal agreement, the court amended the judgement in the federal criminal case "to state that the concurrency language includes 'except for time between January 1, 1999, to January 1, 2000, petitioner shall not receive 123 days of credit for time served on his federal sentence.'" (Dingle Aff. Ex. 23.)

Consequently, Davis was released from ODOC custody on May 1, 2006. Davis filed this civil action on April 27, 2007.

*Legal Standard*

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I.    Defendant State of Oregon's Eleventh Amendment Immunity

Defendant State of Oregon ("the State") contends that Davis's state law claims against it should be dismissed, because the State is entitled to Eleventh Amendment immunity. Davis argues the State failed to preserve this argument at an earlier stage of litigation, thus, it has effectively been waived.

The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). Eleventh Amendment immunity is an affirmative defense that must be raised early in the proceedings to provide fair warning to the plaintiff. *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001). Because it is an affirmative defense, it can be waived if not timely asserted. *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir 1999). Although the waiver must be unambiguous, an express waiver is not required. *Id*. A state may waive its Eleventh Amendment immunity by conduct that is "incompatible with an intent to preserve that immunity." *Id*.

The State has not waived its Eleventh Amendment immunity. In this case, the State raised its Eleventh Amendment immunity repeatedly in the proceedings, providing fair warning to Davis.

On July 3, 2007, the State raised the Eleventh Amendment immunity affirmative defense in the original answer. On July 13, 2007, the State raised the Eleventh Amendment immunity affirmative defense in the amended answer. On May 19, 2008, the State raised the Eleventh immunity affirmative defense in the answer to Davis's first amended complaint. The record clearly establishes that the State's conduct was not "incompatible with an intent to preserve immunity." Therefore, the State has not waived its Eleventh Amendment immunity rights and should be dismissed from Davis's state law claims.

II.     Federal Claims

There are two federal rights which are implicated by Davis's allegedly excessive detention: (1) his Eight Amendment right to be free from cruel and unusual punishment; and (2) his Fourteenth Amendment due process right to be heard after objecting to the legality of the length of his incarceration. Defendants contend that the undisputed facts in this case demonstrate that Davis's constitutional rights were not violated; or, if this court finds that his rights were violated, that Defendants are qualifiedly immune from suit for damages.

   *A.     Eighth Amendment Claim*

The Ninth Circuit has held that "[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest[.]" *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (internal citation and quotation marks omitted). Defendants argue that to be cruel and unusual, the punishment must be incompatible with the evolving standards of decency, or must involve unnecessary or wanton pain disproportionate to the severity of the crime. However, Defendants fail to address the applicable legal standard, whether the conduct at issue was deliberately indifferent to Davis's liberty interest.

In *Haygood*, adequate evidence existed from which the jury could have found liability under

the appropriate standard of deliberate indifference. *Id*. at 1355. In that case, the prisoner challenged the formula by which his prison sentence was calculated. *Id*. at 1352. The problem arose because of an ambiguity between two California statutes. *Id*. The prisoner had been incarcerated on two previous convictions. *Id*. He then escaped from prison and subsequently committed a robbery. *Id*. He was tried for and convicted of both crimes, the robbery and the escape. *Id*. Based on the relevant California statutes, the prisoner disagreed with the calculation of the start date for his sentence for escape. *Id*. The prisoner wrote the warden a letter which questioned the legality of the two sentences running consecutively and demanded he be released. *Id*. at 1353. The letter was investigated by two prison record officers. *Id*. Their written answer to the prisoner explained that, according to the relevant statutes, it was legally appropriate that the sentences run consecutively. *Id*. They attached to their routing slip to the prisoner a copy of an attorney general's opinion that they believed to be supportive of their letter. *Id*. Based on these facts, the court determined there was adequate evidence from which the jury could have found liability under the appropriate standard of deliberate indifference. *Id*. at 1355.

The facts presently before the court in this case are analogous to the facts in *Haygood*. Here, Davis has also challenged the formula by which his prison sentence was calculated. The issue turned on the interpretation of a relevant statute. Davis made numerous attempts to explain the miscalculation and offered legal documents in support of his position. The prison officials responded that, according to the relevant statute and policy, Davis's sentence was computed correctly. The Defendants' response is virtually identical to that in *Haygood* and which the Ninth Circuit found created a jury question on the issue of deliberate indifference. Rather than evaluate the merits of Davis's contentions, the Defendants, a jury could conclude, simply applied a policy to deny Davis's request without first conducting any meaningful analysis of the facts and

FINDINGS AND RECOMMENDATION          9                              {TDW}

circumstances of his case or seeking legal guidance on the issues Davis raised. Thus, as in *Haygood*, a material question of fact exists for the jury as to whether the Defendants' actions rose to the level of deliberate indifference.

        B.       *Fourteenth Amendment Due Process Claim*

Davis's second theory of liability alleges that the illegal incarceration deprived him of liberty without due process of law, in violation of the Fourteenth Amendment. Although the Fourteenth Amendment does not guarantee state prisoners a particular method of calculating prison sentences, where state law creates a statutory right to release from prison, it "also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated." *Haygood*, 769 F.2d at 1355. Therefore, if officials made their calculations in a manner which denied the prisoner his statutory right to liberty without due process of law, a constitutional violation exists and a cause of action is available under section 1983. *Id*.

The court finds *Haygood* also instructive on whether Davis was deprived due process of law. In *Haygood*, the officials knew that the prisoner was protesting his retention in custody. *Id*. at 1357. The officials believed that their understanding of the statutes was superior to that of the prisoner. *Id*. at 1358. The prisoner filed a habeas corpus petition in order to establish that he should have been released. *Id*. The court in *Haygood* stated:

> The denial of due process occurred when state officers, through established interpretations of the regulations for setting release dates, without affording Haygood *an opportunity to be heard*, chose to extend his custodial period. When Haygood finally, by means of habeas corpus, came before the state Supreme Court, he obtained judgment that he should have been released five years earlier. *This was remedial, or postdeprivation relief*.

*Id*. (emphasis added). Thus, the court found that Haygood had stated a section 1983 claim for damages for denial of liberty without due process of law.

Similarly, in this case, Defendants knew that Davis was protesting his retention in custody.

Defendants believed that based upon policy and their understanding of the statute, Davis's continued incarceration was proper. In turn, Davis filed a habeas corpus petition in order to establish that he should have been released. The Ninth Circuit has stated that, "[a]dequate, or due process depends upon the nature of the interest affected." *Haygood*, 769 F.2d at 1355 (citation omitted). "The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the state must provide to satisfy due process." *Id.* (citation omitted). It therefore logically follows that *Haygood* demands more of the Defendants in this case when such a vital liberty interest is at stake, specifically, an "opportunity to heard." Once Davis was denied this opportunity, the relief he obtained through his habeas petition did not suffice as it constituted "remedial or postdeprivation relief." Accordingly, as in *Haygood*, a material question of fact exists for the jury as to whether the Defendants provided Davis adequate due process.

    C.    *Qualified Immunity*

The remaining question is whether Defendants have a qualified immunity defense as a matter of law, or whether a triable issue of fact remains to be resolved. "Even if there is a question of fact for a jury as to whether there was deliberate indifference or a deprivation of due process, it does not mean Defendants cannot have qualified immunity." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1048-49 (9th Cir. 2002).

Qualified immunity shields government officials from liability for damages when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. *Brosseau v. Haugen*, 543 U.S. 194, 202 (2004); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In *Saucier v. Katz*, the Supreme Court held that, in evaluating a defense of qualified immunity, a court must first "determine whether – resolving all disputes of fact and credibility in favor of the party asserting the injury – the facts adduced at summary

FINDINGS AND RECOMMENDATION    11    {TDW}

judgment show that the officer's conduct violated a constitutional right." 533 U.S. 194, 201 (2001). Second, the court must ask whether the right was clearly established. *Id.*[3]

In order for the right to be clearly established, an officer need only be given "fair warning" the conduct could be unlawful. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (*citing United States v. Lanier*, 520 U.S. 259, 270-71 (1997). However, even if the violated right is clearly established, in certain situations it may be difficult to apply the relevant legal doctrine to the particular circumstances the officer faces. If an officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060-61 (9th Cir. 2006). A mistake is reasonable if officers of reasonable competence could disagree on the issue. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

There is clearly established law regarding Davis's rights in this case. "When an official with the authority to rectify an erroneous practice receives notice of the wrongful practice and its harmful consequences, due process requires the state to provide a hearing before a further denial of liberty can be said to be free from § 1983 liability." *Haygood*, 769 F.2d at 1359. Moreover, "under § 1983 when an official fails to take an action that he has a clearly established duty to take and that failure is a foreseeable contributing factor to the violation of a plaintiff's constitutional

---

[3] In *Saucier*, the Supreme Court announced a two-step sequence for resolving qualified immunity claims that required courts to first decide whether a plaintiff had made out a claim of constitutional violation and then, only if plaintiff satisfied that first step, decide whether the constitutional right at issue was "clearly established." 533 U.S. at 201. In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court held that "the *Saucier* procedure should not be regarded as an inflexible requirement" and that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 129 S. Ct. at 818. The Court acknowledged that the lower courts retained the full discretion to decide whether to apply the *Saucier* procedure. *Pearson*, 129 S. Ct. at 821.

rights, the [qualified immunity] defense is similarly unavailable." *Alexander v. Perrill*, 916 F.2d 1392, 1396 (9th Cir. 1990) (*quoting Butz v. Economou*, 438 U.S. 478, 504 (1978)). Here, Davis put the Defendants on notice that an erroneous practice had led to the miscalculation of his sentence. At this point, due process requires the state to provide a hearing. Defendants' failure to do so was a foreseeable contributing factor to the violation of Davis's constitutional rights. Accordingly, the Defendants' motion for summary judgment on their defense of qualified immunity should be denied.

*Conclusion*

For the reasons stated, Defendants' second motion for summary judgment (#72) should be GRANTED in part and DENIED in part. Defendants' motion should be granted as to the State's Eleventh Amendment immunity rights. Defendants' motion should be denied as to the alleged violations of Davis's constitutional rights and the defense of qualified immunity.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 21, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of June, 2010.

/s/ John V. Acosta

JOHN V. ACOSTA
United States Magistrate Judge