IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**JAMES RAY DAVIS**,

               Plaintiff,

    v.

**STATE OF OREGON, et al.**,

           Defendants.

No. CV 07-635-AC

OPINION & ORDER

**MOSMAN, J.**,

On June 7, 2010, Magistrate Judge Acosta issued Findings and Recommendation ("F&R") (#94) in the above-captioned case recommending that I GRANT IN PART and DENY IN PART defendants' Second Motion for Summary Judgment (#72). He recommends that I grant defendants' motion as to the State's Eleventh Amendment immunity rights and that I deny defendants' motion as to the alleged violations of Mr. Davis's constitutional rights and the defense of qualified immunity. Defendants filed objections (#99) to the F&R.

**STANDARD OF REVIEW**

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court

PAGE 1 - OPINION & ORDER

is not required to review, under a de novo or any other standard, the factual or legal conclusions

of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See*

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

(9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R

depends on whether or not objections have been filed, in either case, I am free to accept, reject, or

modify any of the magistrate judge's F&R. 28 U.S.C. § 636(b)(1)(C).

Upon review, I agree with Judge Acosta's recommendation as to Eleventh Amendment

immunity and I ADOPT that portion of the F&R (#94) as my own opinion. I GRANT defendants'

Second Motion for Summary Judgment (#72) as to the State's Eleventh Amendment immunity.

Based on Supreme Court authority not cited to Judge Acosta, I also GRANT defendants' motion

as to the alleged violations of Mr. Davis's constitutional rights and the defense of qualified

immunity.

## DISCUSSION

Plaintiff alleges two constitutional violations: first, that defendants' actions regarding his

requests to recalculate his sentence caused him to serve more time than he should have, in

violation of the Eighth Amendment; and second, that defendants' actions with regard to his

complaints about his sentence calculation violated his due process rights under the Fourteenth

Amendment.

## I.    The Eighth Amendment Claim

As Judge Acosta correctly noted, the Ninth Circuit has held that "[d]etention beyond the

termination of a sentence could constitute cruel and unusual punishment if it is the result of

'deliberate indifference' to the prisoner's liberty interest." *Haygood v. Younger*, 769 F.2d 1350,

1354 (9th Cir. 1985). Judge Acosta's opinion fully lays out the factual background for plaintiff's contention that he was detained beyond the lawful termination of his sentence.

At its core, Mr. Davis's complaint contests the method of calculating his pretrial incarceration credit between his state and federal sentences. The calculations in this case were done according to Oregon Department of Corrections policies, confirmed by written advice from the Oregon Department of Justice. The calculations resulted in a new, later-projected release date. Mr. Davis protested via an Inmate Communication Form, and subsequently filed a grievance. These resulted in a review as to whether the recalculation of his release date had been done according to established protocols and the procedural manual. Mr. Davis was notified that his release date had been properly calculated. After further correspondence, he filed a habeas corpus petition in federal court. Prior to resolution, the parties settled the action with an agreement that he would be released as soon as the federal court's original sentencing judgment was amended. It was subsequently amended "to state that the concurrency language includes 'except for the time between January 1, 1999, to January 1, 2000, petitioner shall not receive 123 days of credit for time served on his federal sentence.'" (Dingle Aff. (#40) Ex. 23.) Mr. Davis was released and filed this civil action.

At summary judgment, Mr. Davis contended that his excessive detention was the result of defendants' deliberate indifference to his liberty interests. Judge Acosta concluded that "a material question of fact exists for the jury to determine whether defendants' actions rose to the level of deliberate indifference." (F&R (#94) 10.) In doing so, he relied almost entirely on *Haygood v. Younger*, an analogous case from the Ninth Circuit. Defendants continue to protest that the facts of this case are distinguishable from *Haygood*. In particular, they focus on the

PAGE 3 - OPINION & ORDER

different procedural posture in *Haygood*, which involved a review of a jury verdict against two prison records officials. The jury had been instructed that they had to find the defendants "by their actions intended to punish plaintiff." *Haygood*, 769 F.3d at 1355. And in denying defendants' motion for judgment notwithstanding the verdict, the district court emphasized that there was evidence from which the jury could find the defendants intended to punish Haygood. *Id*. Defendants in this case assert that there is no evidence on which a reasonable jury could rely in finding that they intentionally disregarded or refused to investigate Mr. Davis's complaints.

More fundamentally, however, defendants now suggest, for the first time, that an intervening Supreme Court decision calls into question the continued validity of *Haygood*, at least as it has been applied to this case. In *Farmer v . Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a prison official cannot be found liable under the Eighth Amendment on the basis of deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. *Farmer* emphasizes that deliberate indifference requires not only an objective risk of harm, but also a subjective awareness of that harm. To put the formula into the context of the present case, there must be facts, viewed in the light most favorable to Mr. Davis, on which a jury could find defendants knew of a substantial risk that his release date had been miscalculated, that they subjectively drew that inference from those facts, and still disregarded the risk.

Viewed in this light, there are no facts on which a jury could reasonably find for Mr. Davis. Even if his complaints, at summary judgment, create the inference that defendants knew

of a substantial risk that he was being held unlawfully (which would require them to be aware of some reason why the policies and procedures they were following were—or at least could be—incorrect), defendants still must be found to have unreasonable responded, "even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Nothing in this record even inferentially indicates that the prison-term analysts who conducted the reviews of Mr. Davis's sentence were in any position to modify, re-examine, or correct the established policies and procedures by which they calculated his release date. Mr. Davis requested reviews, and repeatedly got them. At some point, he was even advised that (since his release date had been repeatedly calculated according to existing guidelines) any further challenge must be "addressed with the courts." (F&R (#94) 5.) Deliberate indifference requires something more than just being mistaken. Yet Mr. Davis has not provided any evidence on which a jury could find more than simply a possible awareness of the risk of unlawful detention.

## II.    **The Fourteenth Amendment Claim**

Judge Acosta held that "a material question of fact exists for the jury as to whether the Defendants provided Mr. Davis adequate due process." (F&R (#94) 11.) Specifically, Judge Acosta found that, given the vital liberty interest at stake here, Mr. Davis was never given a constitutionally adequate "opportunity to be heard." (*Id.*) In doing so, Judge Acosta once again relied entirely on *Haygood*, in which the court stated: "The denial of due process occurred when state officers, through established interpretations of the regulations for setting release dates, without affording Haygood an opportunity to be heard, chose to extend his custodial period." 769 F.2d at 1358.

Here, of course, in an administrative sense, Mr. Davis had an opportunity to be heard. He

PAGE 5 - OPINION & ORDER

raised questions about the recalculation of his sentence, and those questions were investigated

and answered, repeatedly. If Mr. Davis had been raising a *factual* question about the calculation

of his release date—i.e., that the prison was mistaken about the date on which he began serving

his sentence, or had mistakenly counted the number of days he had already served—then this

administrative process of Inmate Communication Forms, and the chance to file grievances,

would be sufficient to satisfy due process. Certainly there is no requirement that a full-blown

hearing of some kind be held for all such challenges. And if a prisoner raises factual questions

about the calculation of his sentence, and the prison officials do nothing, or only go through the

bare form of a response with no investigation—in one court's formulation, if they "sit on [their]

duff and [don't] do anything"—then the effective denial of any meaningful opportunity to be

heard can amount to a denial of due process. *See Alexander v. Perrill*, 916 F.2d 1392, 1395 (9th

Cir. 1990).

But that is not what happened here. Mr. Davis never raised a factual question about the

calculation of his sentence, and never presented any evidence that his release date was

miscalculated. He initially, and understandably, raised questions about what had happened. The

prison officials provided an explanation. His challenge ultimately went to the method of

calculation, not to any underlying facts. The prison officials rightly viewed this as a complaint

about the nature and terms of his sentence, which they lacked the authority to address. They

reminded him of his option to raise a challenge like that in the courts, which he did. What

*Haygood* imposes on prison officials is essentially a duty to investigate in good faith, and

respond. *See also Alexander*, 916 F.2d at 1398. But in this case, Mr. Davis presented prison

officials with nothing to investigate.

PAGE 6 - OPINION & ORDER

I am persuaded by the reasoning in *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993), which addressed the scope of *Alexander*'s duty to investigate when the issue is a purely legal one, as in this case:

> Bagley argues that even if he was not entitled to credit for the time served on the vacated federal sentences, he has stated a failure-to-investigate claim under Section 1983. He relies on *Alexander v. Perrill*, 916 F.3d 1392, 1399 & n.13 (9th Cir. 1990) . . . . [W]e believe [*Alexander*] would not apply in the present situation. There was nothing to "investigate" here. There were no facts in dispute, simply a legal claim by Bagley that he was entitled to credit, a claim that was rejected by the defendant state prison officials until Bagley sued them in state court and obtained his credit by way of a settlement. So far as the federal Constitution is concerned, at least, the state officials were correct in rejecting Bagley's position. The state officials took a certain position, neither malicious nor unreasonable on its face, Bagley took them to court, and they then settled the case. We see no deprivation of due process here.

5 F.3d at 330.

For these reasons, I hold that defendants' actions here did not violate the Fourteenth Amendment guarantee of due process.

### III.    Qualified Immunity

Judge Acosta denied defendants' motion for summary judgment on qualified immunity. Relying once again on *Haygood*, he found that clearly established law governed both the Eighth Amendment and Fourteenth Amendment claims. To the extent he found clearly established law on the Eighth Amendment, he had not been given the benefit of any citation to the Supreme Court's decision in *Farmer*. In light of that case, it cannot be said that the law is clear, and I grant defendants' motion for summary judgment on qualified immunity as to Mr. Davis's Eighth Amendment claim. I further find the law regarding what prison officials owe by way of a duty to investigate to turn on the nature of the complaint. Viewed in light of that distinction, and the language of the Eighth Circuit's decision in *Bagley*, I find the law to be, at a minimum, not clear

on what more the prison officials needed to do in this case beyond what they had already done. I therefore grant the motion for summary judgment on qualified immunity as to Mr. Davis's Fourteenth Amendment claim.

### CONCLUSION

I agree with Judge Acosta's recommendation as to Eleventh Amendment immunity and I ADOPT that portion of the F&R (#94) as my own opinion. Therefore I GRANT defendants' Second Motion for Summary Judgment (#72) as to the State's Eleventh Amendment immunity. As described above, I also GRANT defendants' motion as to the alleged violations of Mr. Davis's constitutional rights and the defense of qualified immunity.

IT IS SO ORDERED.

DATED this  16th  day of August, 2010.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Court